## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RITA KAMAL MARZOUQ and**
**KAMAL Y. MARZOUQ**
on behalf of herself and all
others similarly situated

**Plaintiff**

Case No. 17-
Hon.

v.                                        **PROPOSED CLASS ACTION**

**HOLZMAN CORKERY, PLLC and**
**DETROIT LEGAL NEWS PUBLISHING, LLC.**

**Defendant**.

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiffs**, RITA AND KAMAL MARZOUQ** (hereinafter referred to as "Marzouq" or "Plaintiff") by and through counsel, The Law Offices of Brian Parker, PC, and brings the action against the above listed Defendant**, HOLZMAN CORKERY, PLLC** ("HOLZMAN" or "Defendant") and **DETROIT LEGAL NEWS PUBLISHING, LLC** ("DLNP" or "Legal News") on the grounds set forth herein:

## I. PRELIMINARY STATEMENT REGARDING THIS CASE

1.     The Plaintiff alleges that Defendant HOLZMAN collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and The Regulation of Collection Practices Act (RPCA), codified in computer generated communications from a law firm breaches the privacy of Plaintiff, charge UNEARNED foreclosure and attorney fees and costs, fail to validate a debt and whose notices and responses lack meaningful review or involvement by Defendant Attorneys as represented.

2.      Defendant HOLZMAN is foreclosing on the Marzouqs using false information it depends upon from banks and loan servicers and then using that false information to collect debts and provide it to the Detroit Legal News for publishing online and throughout the State of Michigan.

3.      The Plaintiff further alleges that Defendant Detroit Legal News Publishing, LLC (DLNP) is violating 15 USC 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in creating their consumer reports for reselling to target marketers.  DLNP is failing to use any reasonable procedures to assure maximum possible accuracy of the information it receives and re-sells from foreclosure sources like Defendant HOLZMAN who also fail to provide accurate validation information.

4.      Plaintiff seeks statutory, actual damages and equitable and injunctive Relief in stopping Defendant DLNP from creating "Public Notice" consumer reports that it creates based on inaccurate information born out of few if any, reasonable procedures and review of the information it receives from HOLZMAN that it uses to create the consumer reports and sell them to target marketers.  **Please see Exhibit 5**.

## II.  CASELAW AND CONSUMER STATUTES REGARDING THIS CASE

### a.      FDCPA

5.      The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

6.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Sixth Circuit has held that whether a debt collector's conduct

violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008).

7.      The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Schroyer v. Frankel*, 197 F.3d 1170, 1173-74 (6th Cir. 1999); *See also Kistner*, 518 F.3d 433 (the law firm's owner may also be individually liable).

8.      In *Heintz v. Jenkins,* the Supreme Court refused to defer to the FTC commentaries. *Heintz* addressed the FTC's purported exclusion from FDCPA coverage of attorneys engaged in "legal activities" as opposed to those engaged in "debt collection activities." Rejecting this exclusion, the Supreme Court noted that the commentaries themselves state that they are "not binding on the Commission or the public." *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995). See *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

9.      "In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453. *See Goodrow v. Friedman & MacFadye*n, P.A., 788 F. Supp. 2d 464, 471 (E.D.Va. 2011) ("[A] debt collector must comply with the FDCPA while complying with a state foreclosure law."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998).

10.      HOLZMAN becomes involved with these mortgage debts after they considered delinquent or in default. HOLZMAN is aware of that lawyers who meet the general definition of a "debt collector" must comply with the FDCPA when engaged in mortgage foreclosure. See

*Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

11.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1)-(16). Among these *per se* violations prohibited by that section are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

12.     Among the *per se* violations prohibited by the FDCPA is 15 U.S.C. § 1692c(b):

(b) COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, ***a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector***.

13.     Under 15 U.S.C. § 1692g (b),

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, ***the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (emphasis added)***

14.     The FDCPA at 15 U.S.C. § 1692e (6), states that a debt collector may not use any false, deceptive, or misleading representation… with:

(**6**) The false representation or implication that a sale, referral, or other transfer of any interest in

a debt shall cause the consumer to—

(**A**)lose any claim or defense to payment of the debt; or

(**B**)become subject to any practice prohibited by this subchapter.

15.    In *Hartman v. Asset Acceptance Corp.* S.D. Ohio,2004. Page 16, the Court held that the

terminology of subsection § 1692e (6) "is intended to prohibit the representation, or threat, that if

the debtor `Fails to pay up," the debt will be sold to someone else, adversely affecting the

debtor's rights.

16.    The FDCPA states at 15 U.S.C. § 1692d that:

A debt collector may not engage in any conduct the natural consequence of which is to harass,

oppress, or abuse any person in connection with the collection of a debt. Without limiting the

general application of the foregoing, the following conduct is a violation of this section:

(**4**) The advertisement for sale of any debt to coerce payment of the debt.

17.    In 2014, 6th Circuit expanded dispute verification rules under the FDCPA with *Haddad* v.

*Alexander, Zelmanski, Danner & Fioritto, PLLC,* 758 F. 3d 777 - Court of Appeals, 6th Circuit

2014. The *Haddad* Court announced a new standard for verification under § 1692g(b), holding

that "the verification provision must be interpreted to provide the consumer with notice of how

and when the debt was originally incurred or other sufficient notice from which the consumer

could sufficiently dispute the payment obligation." *Haddad* at 785-786.

18.    As stated above, the FDCPA provides tools for consumers to remedy abuses under the Act

such as Sections 1692c(b), 1692d and 1692e.

    **b.    FCRA (as to the DLNP class liability)**

19.     The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, is designed to accomplish dual goals: "to promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews,* 534 U.S. 19, 23, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001); *see also* 15 U.S.C. § 1681a(4). Towards this end, the Fair Credit Act regulates the permissible uses of "consumer reports," which summarize credit history and credit worthiness, *see* 15 U.S.C. § 1681b, and creates a private right of action allowing injured consumers to recover for negligent and willful violations of the Fair Credit Act. *See* 15 U.S.C. § 1681n (willful violations); 15 U.S.C. § 1681o (negligent violations).

20.     The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a *consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living* which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C)    any    other    purpose    authorized    under    section    1681b    of    this    title.

15 U.S.C. § 1681a(d)(1)

21.     The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

22.      Consumer reporting agencies pursuant to Section 1681e(b) of the Fair Credit Reporting Act are required to "follow reasonable procedures to assure maximum possible accuracy when preparing a consumer report."  *Nelski v. Trans Union, LLC*, 86 F.App' 840, 844 (6th Cir. 2004).  Under this section, "liability flows only from a 'failure to follow (1) reasonable procedures (2) to assume maximum possible accuracy of the information (3) concerning the individual about whom the information relates.  *Id* at 844.  The reasonableness standard is "what a reasonably prudent person would do under the circumstances."  *Id* at 844.

23.      The Sixth Circuit has established that the elements necessary to assert a claim under 1681e(b) involve a Plaintiff proving (1) the Defendant reported inaccurate information about the Plaintiff; (2) the Defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the Plaintiff; (3) the Plaintiff was injured; and (4) the Defendant's conduct was the proximate cause of the Plaintiff's injury.  *Nelski* at 844.

24.      A credit report is "inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Poore v. Sterling Testing Systems, Inc.,* 410 F.Supp.2d 557 (E.D.Ky. 2006) See also *Dickens v. Trans Union Corp.*, 18 F.App'x 315, 318 (6th Circ. 2001).

### c.   The Michigan Foreclosure Statute

25.      Under Michigan's Foreclosure Statute at MCL 600.3212:

**600.3212 Notice of foreclosure by advertisement; contents.**

Every notice of foreclosure by advertisement shall include all of the following:

(a) The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.
(b) The date of the mortgage and the date the mortgage was recorded.
(c) The amount claimed to be due on the mortgage on the date of the notice.

(d) A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.

(e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.

(f) A statement that if the property is sold at a foreclosure sale under this chapter, under section 3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

26.     The posting the Notice of Mortgage Foreclosure Sale is one of those activities taken in relation to a debt "for the purpose of obtaining payment on the underlying debt."  While the publishing of the Notice of Mortgage Foreclosure sale under MCL 600.3212 is the beginning of the foreclosure process, the actual Sale represents the end of the debt and its collection. *Himmelein v Federal Home Loan Mortgage Corporation, Trott Law P.C. FKA Trott & Trott, P.C. and Roger A. Smith*, File No. 1:15-cv-813 (2015).

27.     Prior to the repeal of the Foreclosure Statute at MCL 600.3205 and MCL 600.3205a-e in 2013, the Statute offered protections that mandated that the homeowner receive a written notice of foreclosure, the right to bring an action in Circuit Court to enjoin a foreclosure, loan modification programs and processes to save the home, a housing counselor list and a right to seek a 90-day delay on the foreclosure while the homeowner sought a modification of the debt. The Michigan Legislature eliminated those consumer protections by repealing them in on June 30, 2013.

28.     When there is a conflict in the protections offered to a consumer in a Michigan Statute and the Federal Statute, the FDCPA states that the debt collector must follow the Federal Statute when it offers greater protections than the conflicting State Statute:

### § 816.  Relation to State laws [15 USC 1692n]

This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, ***a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.***

29.     Article VI of the Constitution of the United States provides:

This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding. U.S. Const. art. VI, cl. 2.

30.     Only state laws which make it impossible to comply with both state and federal law

(*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10

L.Ed.2d 248 (1963)), such as where state law requires conduct prohibited by federal law, are

preempted.

31.     Where there is "conflict preemption," which is "where state law `stands as an obstacle to

the accomplishment and execution of the full purposes and objectives of Congress'" embodied by

the federal law, *(Gade v. National Solid Wastes,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d

73 (1992)), `[t]he purpose of Congress is the ultimate touchstone.'" *Metropolitan Life Ins. Co. v.*

*Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)."

32.     The RCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive,

threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt.

"The RPCA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use

of the "least sophisticated consumer" standard of *Kistner*, 518 F.3d at 441. *McKeown v. Mary*

*Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007)

(citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)).

33.     The State of Michigan's Regulation of Collection Practices Act (RCPA) prohibits any

"regulated person" from "[m]aking an inaccurate, misleading, untrue, or deceptive statement or

claim in a communication to collect a debt," Mich. Comp. Laws § 445.252(e), and from

"[m]isrepresenting in a communication with a debtor [either] [t]he legal status of a legal action

being taken or threatened [or] [t]he legal rights of the creditor or debtor," Mich. Comp. Laws §

445.252(f). The RCPA defines the term "regulated person" to mean "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name." *MARTIN v. TROTT LAW, P.C.*, Case No. 15-12838 (July 26, 2016).

34.     The Plaintiffs seek statutory and actual damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, FCRA RCPA, and all other common law or statutory regimes.

## III. PARTIES AND APPLICABLE STATUTES

35.     Plaintiffs are consumers and natural persons and at all times relevant to this complaint, resided in the City of Detroit, County of Wayne, State of Michigan.

36.     Located in the City of Southfield, Oakland County and State of Michigan, HOLZMAN & CORKERY, PLLC ("HOLZMAN") are debt collectors under the FDCPA and RCPA and a mortgage foreclosure law firm engaged in the business of using the mail, public notices and telephone to collect consumer debts originally owed to others, including residential mortgage debts. Mortgage foreclosure is debt collection under the FDCPA See *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453.

37.     HOLZMAN becomes involved with these mortgage debts after they considered delinquent or in default. HOLZMAN is aware of that lawyers who meet the general definition of a "debt collector" must comply with the FDCPA when engaged in mortgage foreclosure. See *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

38.     According to Defendant DLNP's website, "Detroit Legal News Publishing is the leading provider of legal information in Michigan, publishing 10 newspapers across the Lower Peninsula"

and "LegalNews.com is designed to be the premier digital source of legal news and public notice information in the state." Defendant is a consumer reporting agency under 15 U.S.C. § 1681a(f). DLNP's resident agent is located in East Lansing, County of Ingham, State of Michigan.

39.     The alleged debt being collected by HOLZMAN is a "debt" as defined by 15 U.S.C. §1692a (5). The alleged mortgage debt is a "consumer debt" as defined by the RCPA under MCL 445.251(a).

40.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a (3). Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by the RCPA under MCL 445.251(d).

41.     HOLZMAN is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by the RCPA.

42.     As a mortgage foreclosure law firm, Defendant HOLZMAN is, at all times relevant to this complaint, a "regulated person" as that term is defined by the RCPA under MCL 445.251(g).

43.     HOLZMAN is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a (6).

44.     Defendant HOLZMAN is a regulated person under the RCPA regardless of whether the firm's collection activities were carried out "in its own name" or on behalf of its clients. *Ward v. G. Reynolds Sims & Assoc.*, No. 12-12078, 2013 WL 364012 (E.D. Mich. Jan. 30, 2013); *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012); *Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591 (E.D. Mich. 2012); *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 (E.D. Mich. 2011); *McKeown v. Mary Jane M. Elliott P.C.*, No. 07-12016, 2007 WL 4326825 (E.D. Mich. Dec. 10, 2007).

## IV. JURISDICTION & VENUE

45.     Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337.

46.     Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans & Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015). Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

47.     The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be addressed separately").

48.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

### V. FACTS CONCERNING PLAINTIFF AND THE FORECLOSURE NOTICE

49.     Under the guise of following the State Foreclosure Statue, Defendant HOLZMAN is violating Federal and State law STATEWIDE and breaching the Plaintiff homeowner's right to privacy in publicizing consumers' private debt information in Public Notices to the internet, newspapers and the Detroit Legal News beyond what is required under the State Foreclosure law at MCL 600.3212 with consumers suffering mental distress and embarrassment, damage to their reputations in the community as everyone now knows Plaintiff is in default of a debt, the amount and that they are being pursued by debt collectors with the Defendant breaching the homeowners'

privacy rights also in violation of both the statutory and actual damages provisions of the FDCPA and RCPA.  **Please see Plaintiff's Exhibit 1 and Affidavit at Exhibit 4**.

50.     Sometime prior to May 8, 2017, Plaintiff allegedly incurred a financial obligation on a mortgage that HOLZMAN seeks to foreclose upon on June 15, 2017.

51.     The mortgage debt arose out of a transaction in which the money, property, insurance, or services are the subject of the transaction that are primarily for personal, family, or household purposes.

52.     Part of HOLZMAN's primary focus is the representation of banks, servicers and credit unions in foreclosing upon homeowners like the Plaintiffs to sell the underlying debt on the home.

53.     As part of the HOLZMAN' s foreclosure process, Defendant sends Michigan homeowners initial debt communication letters similar to **Exhibit 1** and follows up by posting Mortgage Foreclosure Sale Notices on the internet, county buildings and newspapers in **Exhibit 2** in violation of the FDCPA and RCPA and all without meaningful attorney involvement or review of the client file by the attorney.

54.     The letter at **Exhibit 1** states that "This communication is made for the purpose of collecting a debt, and any information received will be used of the that purpose. Please see the attached Validation Notice for a further explanation of your rights."

55.     Here, the letters at **Exhibit 1** show that Defendant represents Credit Union One c/o Member First Mortgage, LLC and provides a Validation Notice stating that Plaintiffs owe $51,013.27 as of May 8, 2017, Credit One is the Creditor and the Marzouqs are the Debtor:

## VALIDATION NOTICE

CREDITOR:        Credit Union One c/o Member First Mortgage, LLC

DEBTOR:          Kamal Y. Marzouq and Rita Kamal Marzouq

BALANCE:         $51,013.27 (as of May 10, 2017)

ACCOUNT NO.:     5103001031

56.     The letter also provides a Mortgage Foreclosure Notice ("Public Notice") detailing a date of Sheriff Sale on June 15, 2017. Please see **Exhibit 2**.

57.     The Notice at **Exhibit 2** states in bold letters that "there is claimed to be due at the date hereof, the sum of FORTY-NINE THOUSAND NINE HUNDRED FIFTY-THREE AND 29/100 DOLLARS ($49,953.29) including interest at 6.37500% per annum." The Notice also publicizes that the debt is in default, a debt collector is collecting a debt (IN BOLD LETTERS) and the names of the Plaintiffs in BOLD LETTERS:

Holzman Corkery, PLLC By: Charles J. Holzman 28366 Franklin Road Southfield, Michigan 48034 THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. MORTGAGE FORECLOSURE NOTICE MORTGAGE SALE Default has been made in the terms and conditions of a mortgage made by KAMAL Y. MARZOUQ and RITA KAMAL MARZOUQ, husband and wife, Mortgagors, to CREDIT UNION ONE, Mortgagee, dated November 10, 2004, and recorded on November 16, 2004, in Liber 41703 on Page 1293, Wayne County Records, Michigan, and on which mortgage there is claimed to be due at the date hereof the sum of FORTY-NINE THOUSAND NINE HUNDRED FIFTY-THREE AND 29/100 DOLLARS ($49,953.29) including interest at 6.37500% per annum. Mortgage

58.     The letter at **Exhibit 3** on May 11, 2017 advises that Plaintiffs that they owe $4,517.22 to be paid by May 31, 2017 to prevent the substantial increase of Attorney fees.

59.     HOLZMAN is stating that one day after Plaintiff has received a first letter warning the homeowner the home is going to be foreclosed upon but they have the right to validate the debt, Plaintiffs have incurred $140.00 in Foreclosure Fees, $667.96 in Attorney Foreclosure Costs and $225 in Attorney Foreclosure Fees.

Pursuant to your request, the following constitutes a statement Member First Mortgage, LLC as of May 31, 2017*, that must be paid to cure the default under the loan and mortgage.

| Member First Mortgage, LLC: | |
|---|---|
| Principal & Interest - 6 payments @ $552.66 | $3,315.96 |
| Foreclosure Fees | 140.00 |
| Late Fees | 168.30 |
| Attorney Foreclosure Costs | 667.96* |
| Attorney Foreclosure Fees | 225.00* |
| **TOTAL OWED TO MEMBER FIRST MORTGAGE** | **$4,517.22** |

 **Please see Exhibit 1**.

60.     The Plaintiff sent a letter to Defendant seeking validation of why Plaintiffs owe different amounts and the justification of the charges in fees and costs. **Please see Exhibit 3**. Defendant HOLZMAN did not respond by continues to publicize the private debt information in the Detroit Legal News. **Please see Exhibit 3**.

61.     It is believed that Defendant HOLZMAN charges all homeowners for UNEARNED foreclosure fees, Attorney foreclosure costs and Attorney Foreclosure fees before the fees and costs are incurred by an actual attorney and before the foreclosure process is complete.

62.     Indeed, HOLZMAN attorneys have done nothing on the file when the Public Notice is advertised just two days before Michigan Homeowners receive the first letter from Holzman Corkery that they face foreclosure. **Please see Exhibit 1 showing the first letter and Public Notice**.

63.     Seeking to foreclose on a home by selling the underlying debt in a Sheriff Sale and publishing the Sheriff Sale in a Mortgage Foreclosure Sale Notice (Public Notice) is considered debt collection. "First, the Court relied upon *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453 (6th Cir. 2013) to reach the conclusion that the notice of sale was a communication made for the purpose of obtaining payment on the underlying debt." *Gray v Trott & Trott, P.C.* Case Number #16-00237 W.D.Mich. (January 19, 2016).

64.     HOLZMAN posted the home as for sale along with the private debt information in the Detroit Legal News and on the Internet for the purpose of paying off the underlying debt. Please see **Exhibit 1 and 2**.

65.     Further, the information enclosed inside the Public Notice posted in the paper and the internet went beyond the requirements of the Michigan Foreclosure Statute at MCL 600.

66.     The Public Notice stated that the Marzouqs (LARGE BOLD PRINT) were being pursued by debt collectors (Large Bold Print), the mortgage debt is in default, that the Marzouqs owed $49,953.29 on the debt when Defendant HOLZMAN's own Validation Notice appears to say they owe something different, and HOLZMAN is charging the homeowners for foreclosure fees and costs that have not been earned by the law firm. .

67.     The Letters at **Exhibit 1** and Public Notice at **Exhibit 1 and 2** are considered as "communications" to the debtor Plaintiff as defined by 15 U.S.C. § 1692a (2).

68.     As Plaintiff understood the communications at **Exhibit 1 and 2** upon receiving it as would the least sophisticated consumer, the debt collection process has entered into a phase where HOLZMAN will begin to use legal procedures established by foreclosure law and HOLZMAN attorneys to collect the mortgage debt under *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

69.     Plaintiff understood the communications upon receiving them, as would the least sophisticated consumer, that it was coming from a law firm. The letters also state that HOLZMAN is the creditor's attorney.  The Letter at Exhibit 1 has a computer-print out of a signature of one of the attorneys:

Yours very truly,

HOLZMAN CORKERY, PLLC

*Charles J. Holzman*

Charles J. Holzman

70.     However, the letters and Public Notice at **Exhibit 1 and 2** are part of computer generated, mass produced letters and notices sent to homeowners facing foreclosure by HOLZMAN on a Lawyer Letterhead, retained by the creditor whose attorney is HOLZMAN without any meaningful review or involvement by an attorney.

71.     The next part of the foreclosure process after HOLZMAN sends out its initial dunning letters (Exhibit 1) is the setting of the actual Notice of Mortgage Foreclosure Sale which is placed in county buildings, the internet, the Detroit Legal news and on the door of the homeowner for all to see. **Please see Exhibit 1, 2 and 3**.

72.     Here and throughout the State of Michigan, Holzman is charging homeowners for UNEARNED Foreclosure Fees, Attorney Foreclosure Costs and Attorney Foreclosure Fees of over $1,000 before a foreclosure has occurred. **Please see Exhibit 1, letter of May 11, 2017**.

73.     The FDCPA defines communication at 15 U.S.C. § 1692a (2) as:

-18-

(**2**) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person *through any medium*.

74.     Defendant is communicating directly to Plaintiffs when it states in its Public Notice:

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

75.     The Michigan Foreclosure Statute does not require HOLZMAN to include anything in the Public Notice at **Exhibit 2** for UNEARNED Foreclosure Fees, Attorney Foreclosure Costs and Attorney Foreclosure Fees.

76.     The purpose of the Public Notice is to sell the home to pay off the mortgage when the Public Notice states how much debt is owed and "***claimed to be due*** "and that Attorneys are seeking to sell the home to pay off the underlying debt. **Please see Exhibit 2**.

77.     In violation of the FDCPA and RCPA, the private debt information, pursuit by attorney collectors and the fact that the debt is in default is posted to public notices like **Exhibit 2 and 3** throughout the county even though the Michigan Foreclosure Statute does not require the publication of such information.

78.     In the Sixth Circuit, the *Haddad* Court held that "the verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation." *Haddad* at 785-786.

79.     Defendant HOLZMAN is allowing a non-attorney to send out letters with the lawyer letterhead and threats to foreclose on behalf of the Creditor bank in violation of § 445.252(a). **Please see Exhibit 1**. The non-lawyer's involvement with the foreclosure process here and lack of proper validation and continued debt collection, is proof that the debt collection

communications through **Exhibit 1, 2 and 3** have been conducted without meaningful involvement of an attorney or a review of the file by an attorney.

80.      Defendant HOLZMAN did not respond to Plaintiff's request that HOLZMAN validate the debt and prove why it is collecting the amounts it is charging Plaintiffs. **Please see Exhibit 4**.

81.      The legal threat of the letters and public notice imply a heightened severity with the mention of law firms and attorneys so that the least sophisticated consumer would react with a commensurate level of alarm and concern when receiving these debt collection communications.

82.      The notice of sale was a communication made for the purpose of obtaining payment on the underlying debt." *Gray v Trott & Trott, P.C.* Case Number #16-00237 W.D.Mich. (January 19, 2016).

83.      Given how Defendant has yet to validate the debt or the amount owed, it is a violation of 15 U.S.C. §§ 1692g(b) to continue to collect on the debt through **Exhibit 2 and 3** when the debt collector HOLZMAN has not validated the debt as required under 15 U.S.C. §§ 1692g(a)(4).

84.      As a debt collector that is collecting mortgage debts for its creditor clients, Defendant HOLZMAN itself is aware that after the 6th Circuit's ruling in *Glazer v. Chase Home Finance, LLC*, 704 F. 3d 453, 456., that foreclosure firms must comply with the strict mandates of the FDCPA.

85.      Further, the Sixth Circuit in *Glazer* does not create a carve out or exception for the Notice of Mortgage Sale being anything but debt collection and part of the foreclosure process as a communication to collect a debt under the FDCPA.

86.      Given the violations of the FDCPA, RCPA in **Exhibit 1,2 and 3** and the breach of the consumers' privacy rights in **Exhibit 2 and 3**, no attorney could have reviewed the file of the

consumer or signed off on a letter or public notice that is in violation of Federal and Michigan law.

87.     The Defendants' written communications in the forms attached are false, deceptive, and misleading in that these communications fail to follow the Mortgage/Security Instrument Applicable Law and Intent to Sale Provisions of the Contract while falsely maintaining to consumers and homeowner's alike that they are following the Michigan Foreclosure Statute in violating the FDCPA, RCPA

88.     Further, the Defendants' written communications in the form attached as **Exhibit 1, 2, and 3** are false, deceptive, and misleading in that these communications were neither drafted by, nor received any meaningful review or involvement from, a licensed attorney prior to the mailing of said letters in violation of 15 U.S.C. §§1692e, 1692e (3) and 1692e (10).

89.     As a result of the violations of law and the violation of 15 U.S.C. §§1692e, 1692e (3) and 1692e (10), Plaintiffs suffered statutory and actual damages under the FDCPA and RCPA. **Please see Exhibit 4**.

90.     As a result of the violations of law and the breach of the Marzouqs' right to privacy from having their debt information publicized, Plaintiffs suffered statutory and actual damages under the FDCPA and RCPA as the Notices at **Exhibit 2 and 3** were placed in the internet, newspapers and the Detroit Legal News. **Please see Exhibit 4**.

## VI. FCRA LIABLITY OF DETROIT LEGAL NEWS PUBLISHING, LLC. ("DLNP" OR "LEGAL NEWS")

91.     Upon information and belief, Defendant HOLZMAN shares the borrower/homeowner like the Marzouqs' personal information with the Legal News through a secure private computer system known as a Portal. This information that is passed on to the Legal News Portal by

Defendant HOLZMAN includes information from banks and servicers that the borrower is in Default of their mortgage debt. **Please see Exhibit 5**.

92.     *By the click of a mouse*, the portal allows the borrower's information to be transmitted directly from the law firm's proprietary computer system to the Legal News' computer system.

93.     Upon information and belief, the law firm representing the creditor initially obtains borrower information from the loan servicer or lender, including but not limited to information such as borrower name, address, loan number, mortgage amount, date mortgage was recorded with Register of Deeds, assignments of the mortgage, and loan balance.

94.     The borrower information obtained by the law firm is either down loaded directly from the loan servicer or lender and automatically populated into corresponding fields in the law firm's computer system, or manually inputted by a law firm employee called a processor.

95.     Upon information and belief, a foreclosure law firm like HOLZMAN uploads specific information required by state foreclosure statutes directly to the Legal News' computer system via the secure portal.

96.     Upon information and belief, once received, the Legal News' computer system automatically populates with the information and formats it into what appears as the foreclosure notice seen every day in newspapers, the internet and in county buildings.

97.     There is little to no communication that actually occurs between employees of the law firm at HOLZMAN and the Legal News, as that all takes places electronically between the computer systems. There is no procedure maintained or set up by Defendant DNLP that checks or tests the accuracy of the information HOLZMAN is providing to re-populate into the Public Notice consumer reports that the Legal News' computer system creates for publication and sale to Target Marketers.  **Please see Exhibit 5**.

98.     **Target Marketing** involves a company that breaks a market into segments and then concentrates their marketing efforts on one or a few key segments consisting of the customers whose needs and desires most closely match the product or service offerings. See **Exhibit 5** for an example of the target marketers' efforts at homeowners whose debt information appears in the DLNP consumer reports and Public Notices.

99.     Upon information and belief, the HOLZMAN law firm's processor presses a button and sends the borrower's information to the Legal News, where another processor employed by the Legal News takes the baton and sends the information for printing or hands it off further to the process server for attachment to the Marzouq property specifically and homeowners generally.

100.    Defendant DNLP took the same inaccurate information that Defendant HOLZMAN provided to the Marzouqs in the Validation response to them at Exhibit 5 and, without any concern or procedures maintained regarding the accuracy of the debt information, created a consumer report in the form of a Public Notice at **Exhibit 2** and published it and resold it to target marketers to sell their services to the Marzouqs. Please see **Exhibit 5**.

101.    The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information.

102.    The Marzouqs are Plaintiffs under 15 U.S.C. § 1681a(c). Defendant DNLP is a consumer reporting agency under 15 U.S.C. § 1681a(f). The Public Notice at **Exhibit 2 and 3** is an example of the consumer report at 15 U.S.C. § 1681a(d)(1) that Defendant DNLP creates for re-sale to target marketers like the ones at **Exhibit 5**.

103.    As a result of the illegal posting of the Plaintiffs' private debt information in **Exhibit 2**, the Marzouqs are now being inundated with letters from attorneys, modification companies and bankruptcy clinics who have all read about the Marzouqs home going to Foreclosure sale. **Please see Exhibit 5**.  This has added to the embarrassment and shame that the Marzouqs thought they put behind them back in 2008 when they went through bankruptcy for a fresh start. **Please See Exhibit 4**.

104.    DLNP violated the FCRA in publishing and selling inaccurate information and consumer reports without following any reasonable procedures to promote maximum accuracy when it blindly published and sold false debt information from HOLZMAN to target marketers and subscribers of its Detroit Legal News Publication throughout the State of Michigan.  **Please see Exhibit 5**.

105.    As a result of DLNP's wrongful actions under the FCRA as stated above, Plaintiff Marzouqs specifically and Homeowners generally, have had their financial reputation harmed, privacy rights breached and have suffered emotional distress and possible harm to the consumer credit reports if the foreclosure/sheriff sale is conducted based upon inaccurate information and the homeowner loses her home.

## VII. CLASS ACTION ALLEGATIONS AS TO DLNP

106.    Plaintiffs incorporate by reference the aforementioned allegations as if restated fully herein word for word.

107.    The Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

108.    The Plaintiff seeks to certify a FCRA class as set forth below.

109.    The Plaintiff proposes a class comprised of persons with FCRA claims against the

Defendant DLNP and is defined to include (a) each and every natural person whose name, mortgaged property, the fact that their debt was in default and that they were being pursued by a debt collector, and whose property was scheduled for a Sheriff Sale and appears in a Public Notice and consumer report that Defendant created from information supplied by a foreclosure law firm/debt collector; (b) that the information in the Public Notice or consumer report is accumulated without any reasonable procedures maintained by DLNP as to the trustworthiness or accuracy of the information accumulated from HOLZMAN and placed inside the consumer report; (c) that said consumer report or Public Notice was sold for money and profit by DLNP to target marketers to target Plaintiff homeowners going through foreclosure and sheriff sale and the homeowners are named inside the consumer reports or Public Notices; (d) in the State of Michigan.

110.     The identities of all class members are readily ascertainable from the business records of the Defendant; upon information and belief, the class consists of more than 1,000 persons.

111.     Excluded from the Plaintiff Class is the Defendant and all officers, members, partners, managers, directors, and employees of the Defendant and each of their respective immediate families, and legal counsel for all parties to this action and all members of their respective immediate families.

112.     The Plaintiffs' claims are typical of the class members, as all claims are based upon the same facts and legal theories.  Plaintiffs' claims and the claims of all class members are based on the same factual and legal theories.  Moreover, Plaintiffs and all class members have suffered the same or similar injury, loss, and damage, all caused by Defendants' actions as stated about under the FCRA.

113.     The Plaintiffs will fairly and adequately protect the interests of the Plaintiff Classes

defined in this complaint.  Plaintiffs have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them to not vigorously pursue this action.

114.    This action has been brought, and may be properly maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a) **Numerosity**- The Plaintiff is informed and believes and on that basis alleges that the Plaintiff Class defined above is so numerous that joinder of all members would be impractical.  The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

(b) **Common Questions Predominate**- Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members, including (i) whether the Defendant provided a consumer report which reported inaccurate information  about the consumer Plaintiffs due to the lack of proper and reasonable procedures to enhance the trustworthiness and accuracy of the information from the person (HOLZMAN) that is supplying the information without and promise or warranty of accuracy in violation of the FCRA

(c) **Typicality**- The Plaintiffs' claims are typical of the claims of the class members.  Plaintiffs and all members of the Plaintiff Classes

have claims arising out of the Defendant's common uniform

course of conduct complained of herein by being placed in Public Notices for

subscribers of the Legal News.

(d) **Adequacy**- The Plaintiffs will fairly and adequately protect the

interests of the class members insofar as Plaintiffs have no interest

that will prove adverse to the absent class members.  The

Plaintiffs are committed to vigorously litigating this matter.

Plaintiffs has also retained counsel experienced in handling

consumer lawsuits, complex legal issues, and class actions.

Neither the Plaintiffs nor her counsel has any interest which

might cause them to not vigorously pursue the instant class action

lawsuit.

(e) **Superiority**- A class action is superior to the other available means

for the fair and efficient adjudication of this controversy

because individual joinder of all  members would be

impracticable.  Class action treatment will permit a large number

of similarly situated persons to prosecute their common claims in a

single forum efficiently and without unnecessary duplication of

effort and expense that individual actions would engender.

115.    Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil

Procedure is appropriate because adjudications with respect to individual members create a risk

of inconsistent or varying adjudications which could establish incompatible standards of conduct

for the Defendant, who sells these consumer reports to customers throughout the State of

Michigan.

116.     Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil

Procedure is appropriate because the Defendant has acted on grounds generally applicable to the

Class, making appropriate equitable injunctive relief with respect to the Plaintiffs and Class as a

whole.

117.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is

also appropriate in that the questions of law and fact common to members of the Plaintiff Class

predominate over any questions affecting an individual member, and a class action is superior to

other available methods for the fair and efficient adjudication of the controversy.

118.     Depending upon the outcome of further investigation and discovery, the Plaintiffs

may, at the time of class certification motion, seek to modify the class definition and/or certify a

class only as to particular issues pursuant to Fed.R.Civ.P. 23(c)(4).

## VIII. CLASS ACTION ALLEGATIONS AGAINST HOLZMAN

119.     Plaintiffs incorporate by reference the aforementioned allegations as if restated fully

herein word for word.

120.     The Plaintiffs bring this action on behalf of themselves and on behalf of all other

persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

121.     The Plaintiff seeks to certify two classes class as set forth below.

122.   With respect to the First Plaintiff Class, this claim is brought on behalf of a class of (a) all

persons with addresses in the State of Michigan; (b) to whom HOLZMAN created a Public

Notice for publishing in the Detroit Legal News similar to the attached **Exhibit 2**; and published

the personal, private mortgage debt information in an debt collection communication at **Exhibit**

**2** without following the FDCPA ; (c) in an attempt to collect and sell the underlying mortgage

debt that was incurred for personal, family, or household purposes; (d) which **Exhibit 2** were created for the purposed of paying off the underlying debt; (e) during the period beginning one year prior to the filing of this action and ending 21 days after the filing of this action under the FDCPA.

123.    With respect to the Second Plaintiff Class, this claim is brought on behalf of a class of (a) all persons with addresses in the State of Michigan; (b) to whom HOLZMAN created a Public Notice for publishing in the Detroit Legal News similar to the attached **Exhibit 2**; and published the personal, private mortgage debt information in an debt collection communication at **Exhibit 2** without following the FDCPA ; (c) in an attempt to collect and sell the underlying mortgage debt that was incurred for personal, family, or household purposes; (d) which **Exhibit 2** were created for the purposed of paying off the underlying debt; (e) during the period beginning six years prior to the filing of this action and ending 21 days after the filing of this action under the RCPA.

124.    The identities of all class members are readily ascertainable from the business records of the Defendant; upon information and belief, the class consists of more than 1,000 persons.

125.    Excluded from the Plaintiff Class is the Defendant and all officers, members, partners, managers, directors, and employees of the Defendant and each of their respective immediate families, and legal counsel for all parties to this action and all members of their respective immediate families.

126.    The Plaintiffs' claims are typical of the class members, as all claims are based upon the same facts and legal theories.  Plaintiffs' claims and the claims of all class members are based on the same factual and legal theories.  Moreover, Plaintiffs and all class members have suffered the same or similar injury, loss, and damage, all caused by Defendants' actions as stated

about under the FCRA.

127.     The Plaintiffs will fairly and adequately protect the interests of the Plaintiff Classes

defined in this complaint.  Plaintiffs have retained counsel with experience in handling consumer

lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have

any interests which might cause them to not vigorously pursue this action.

128.     This action has been brought, and may be properly maintained, as a class action

pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a

well-defined community interest in the litigation:

       (a)  **Numerosity**- The Plaintiff is informed and believes and on that

basis alleges that the Plaintiff Class defined above is so numerous

that joinder of all members would be impractical.  The names and

addresses of the Class members are identifiable through documents

maintained by the Defendant, and the Class members may be

notified of the pendency of this action by published and/or mailed

notice.

       (b)  **Common Questions Predominate**- Common questions of law and fact exist as

to all members of the Plaintiff Classes and those questions predominate over any

questions or issues involving only individual class members, including (i) whether the

Defendant provided a consumer report which reported inaccurate information  about

the consumer Plaintiffs due to the lack of proper and reasonable procedures to

enhance the trustworthiness and accuracy of the information from the person

(HOLZMAN) that is supplying the information without and promise or warranty of

accuracy in violation of the FCRA, FDCPA and RCPA as to the Public Notice.

(c) **Typicality**- The Plaintiffs' claims are typical of the claims of the
class members.  Plaintiffs and all members of the Plaintiff Classes
have claims arising out of the Defendant's common uniform
course of conduct complained of herein by being placed in Public Notices for
subscribers of the Legal News.

(d) **Adequacy**- The Plaintiffs will fairly and adequately protect the
interests of the class members insofar as Plaintiffs have no interest
that will prove adverse to the absent class members.  The
Plaintiffs are committed to vigorously litigating this matter.
Plaintiffs has also retained counsel experienced in handling
consumer lawsuits, complex legal issues, and class actions.
Neither the Plaintiffs nor her counsel has any interest which
might cause them to not vigorously pursue the instant class action
lawsuit.

(e) **Superiority**- A class action is superior to the other available means
for the fair and efficient adjudication of this controversy
because individual joinder of all  members would be
impracticable.  Class action treatment will permit a large number
of similarly situated persons to prosecute their common claims in a
single forum efficiently and without unnecessary duplication of
effort and expense that individual actions would engender.

129.    Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil

Procedure is appropriate because adjudications with respect to individual members create a risk

of inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendant Holzman as to the Public Notice and DLNP and the selling of these consumer reports to customers throughout the State of Michigan in the Public Notice.

130.     Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate because the Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to the Plaintiffs and Class as a whole.

131.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

132.     Depending upon the outcome of further investigation and discovery, the Plaintiffs may, at the time of class certification motion, seek to modify the class definition and/or certify a class only as to particular issues pursuant to Fed.R.Civ.P. 23(c)(4).

## DEMAND FOR JUDGMENT AND RELIEF AS TO DLNP

**WHEREFORE**, based upon the foregoing facts, the Plaintiff respectfully requests the following relief:

(A)     Statutory and actual damages in an amount to be determined by the Court.

(B)     Deletion or correction of any and all false and inaccurate information being wrongfully reported by the Defendant along with Retractions in the newspaper.

(C)     Statutory costs and attorney fees under the FCRA.

(D)     Injunctive relief, including but not limited to correction of the procedures set up by Defendant to prevent the private information of Class Plaintiffs being sold in an inaccurate consumer report.

(E)     Compensatory and/or punitive damages.

(F)     Pre-and post-judgment interest as provided by law.

(G)     Negligence and Willful Damages.

(H)     Any other relief which the Court deems appropriate.

## DEMAND FOR RELIEF AND FIRST CAUSE OF INDIVIDUAL ACTION AGAINST HOLZMAN

### RCPA CLASS ALLEGATIONS FOR STATUTORY AND ACTUAL DAMAGES AND INJUNCTIVE RELIEF

133.    Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are not necessarily limited to, the following:

a.      Defendants violated MCLA 445.252(a) by communicating with Plaintiff and class members in a deceptive manner using the stationery of an attorney combined with allowing a non-attorney to rely upon the lawyer letterhead and using false Public Notices that don't comply with the Michigan Foreclosure Statute to take the Plaintiff's homes as mentioned above; and

b.      Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt, using the exhibits above and publicizing personal debt information beyond the Michigan Foreclosure Statute mandates as mentioned above; and

c.      Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting the underlying debt without revealing the proper and exact amount owed by Plaintiff as mentioned above; and

-33-

d.      Defendant has violated MCLA 445.252(f) Misrepresenting in a communication with a

debtor 1 or more of the following:

(i)      The legal status of a legal action being taken or threatened.

(ii)     The legal rights of the creditor or debtor; and

e.      Defendant has violated MCLA 445.252(d) by using forms that may otherwise induce the

belief that they have judicial or official sanction is involved such as (*Exhibit 2*) when they

contain false or illegal information as stated above; and

f.      Defendant has violated MCLA 445.252(a) by communicating with a debtor in a

misleading and deceptive manner with forms such as (*Exhibit 1,2 and 3*) while failing to provide

proof of the amount of debt and reinstatement amounts owed in dunning letters; and

g.      Defendant has violated MCLA 445.252(q) by failing to implement a procedure designed

to prevent a violation by an employee with forms and practices involving (*Exhibit 1,2 and 3*)

with forms that are clearly illegal and not justified in the breach of privacy in seeking amounts

not owed. **Please see Exhibit 1 and 2**.

        **Wherefore**, Plaintiff seeks judgment for actual and statutory damages and INJUNCTIVE

RELIEF against Defendants for:

a.      Actual (Exhibit 4) and statutory damages based on the actions of Defendant in charging
        improper amounts, with false forms and attorney representations pursuant to M.C.L.
        445.257 ((1). Triple Actual damages if the Court finds Defendants' scheme and plan
        alleged above as willful non-compliance. M.C.L. 445.257(2); and
b.      Equitable, declaratory and INJUNCTIVE RELIEF pursuant to M.C.L. 445.257(1) to stop
        the wrongful, willful and illegal plan and scheme of defendants as alleged above using
        (*Exhibit 1,2,and 3*); and
c.      Reasonable attorney's fees and court cost pursuant to M.C.L.445.257(2) with judicial
        sanction and Injunctive Relief.

## DEMAND FOR RELIEF AND SECOND CAUSE OF INDIVIDUAL ACTION AGAINST HOLZMAN UNDER THE FDCPA

134.    Defendant has violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.    Defendant violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (10) by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a mortgage debt using the communications at **Exhibit 1, 2, and 3** and breaching Plaintiff's privacy while claiming to follow the Mortgage Foreclosure Statute when HOLZMAN knows that a debt collector must comply with the FDCPA as stated above; and

b.    Defendant collected on the debt and violated 15 U.S.C. 1692d with conduct described above that harasses and abuses a homeowner in connection with collecting the mortgage debt through **Exhibit 2** in publicizing private mortgage debt information as stated above; and

c.    The Defendant communicated to third parties and the world in publishing foreclosure sale notices with the mortgage debt amount, the homeowner's name being collected upon by a debt collector IN BOLD and that she is in default through **Exhibit 2** in violation 15 U.S.C. §1692c(b); and

d.    Defendant violated 15 USC 1692e (6) with the false representation or implication that the Notice of Foreclosure Sale in **Exhibit 2** allows the debt collector to violate the FDCPA; and

e.    Defendant violated 15 U.S.C. 1692d (4) by publishing that the sale of the mortgage debt to the world and the State of Michigan using **Exhibit 2** as mentioned above beyond the State Foreclosure Statute; and

g.    Defendant violated 15 U.S.C. 1692e (3) and (10) by communicating with mass produced

letters and notices that claim to have an attorney review when there is no meaningful attorney involvement with communications to homeowners and "an unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up" in **Exhibit 1 and 2** as mentioned above. *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996); and

h.      Defendant violated 15 U.S.C. 1692e (2)(A) and (B) in false representation of the character, amount and legal status of a debt in charging for services and fees that are UNEARNED prior to the resolution or completion of the Sheriff Sale process as mentioned above in the Foreclosure Attorney Fees and costs being charged on May 11, 2017 when the Foreclosure process started May 8, 2017. **Please see Exhibit 1**.

**Wherefore**, Plaintiff seeks judgment against Defendant for:

a.      Statutory (Exhibit 4) and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B);
b.      Statutory damages and Actual Damages;
c.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3); and;
d.      Such further relief as the court deems just and proper.

### IX. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

Respectfully submitted,

May 30, 2017

*s/ Brian P. Parker*
Brian P. Parker, Esq. (P48617)
*Attorneys for Plaintiff Marzouq and all others similarly situated*